IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Virginia


FILED
AUG - 4 2020
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Criminal No. 1:17-CR-270 |
| v. ) | |
| ) | Honorable Liam O'Grady |
| AMAN HASSAN YEMER, *et al.* ) | |
| ) | UNDER SEAL |
| Defendant. ) | |
| ) | |

### MOTION FOR EMERGENCY RELIEF AND FOR A HEARING

Defendant, Aman Hassan Yemer, by counsel, moves this Honorable Court for entry of an Order directing the United States to (1) immediately issue him travel documents; (2) direct his immediate return from Pakistan to the United States through official government channels, or (3) for such other relief as is necessary to vindicate his constitutional right to reenter the United States from abroad. In support of this Motion, Mr. Yemer states as follows:

### BACKGROUND

Mr. Yemer, age 28, is a United States citizen and a resident of Alexandria, Virginia. In September 2009, Mr. Yemer and his codefendants traveled from the United States to Pakistan with the alleged goal of trying to connect with militant groups in Pakistan. The defendants' parents notified the FBI and reported them missing out of concern for their safety after finding a farewell video one of them left behind.

On September 12, 2009, Pakistani police raided the private home of a relative in Sargodha, Pakistan after receiving information provided by the defendants' parents to the FBI, including information about the defendants' likely whereabouts in Pakistan. All five defendants were arrested by the Sargodha police authorities and charged with violations of Pakistan's Anti-

Terrorism Act of 1997.

On June 24, 2010, all five defendants were convicted under sections 7(d) and 11-N of the Anti-Terrorism Act and sentenced to ten-year terms of imprisonment and fines of Rs 70000.00. (Judgment, *State v. Umar Farooq, etc.,* Court of Mian Muhammad Anwar Nazir, (District & Sessions Judge), Sargodha, attached as Ex. 1).

On November 16, 2017, a grand jury in the Eastern District of Virginia returned a four-count indictment charging all five codefendants with Conspiracy to Provide Material Support to Terrorists (18 U.S.C. § 2339A); Attempting to Provide Material Support to Terrorists ( 18 U.S.C. § 2339A); Conspiracy to Provide Material Support to a Designated Foreign Terrorist Organization (18 U.S.C. § 2339B); and Attempting to Provide Material Support to a Designated Foreign Terrorist Organization (18 U.S.C. § 2339B). (Dkt. 10). The government has made no attempt to extradite the defendants while they have been serving their prison sentences in Pakistan.

In mid-December 2019, the undersigned requested assistance from Assistant United States Attorney James P. Gillis with Mr. Yemer's deteriorating medical condition, his anticipated release from prison and the means by which he would be returned to the United States. On December 20, 2019, Mr. Gillis informed counsel that he had received information from U.S. government sources that the defendants had been scheduled for early release in mid-December 2019, but could not be released because their fines had not been paid. AUSA Gillis also provided counsel with contact information for the State Department Country Officer for Syria and Pakistan, and with the name and contact information of an official in Pakistan with whom counsel could communicate about the defendants' release and the payment of fines.

AUSA Gillis has continued to assist counsel in requesting assistance from the State

Department and from officials at the Department of Justice and FBI, including as recently as today. To date, officials at the State Department have ignored counsel's (and presumably AUSA Gillis') requests for assistance and have failed to issue Mr. Yemer travel documents. Counsel's efforts to have Mr. Yemer returned to the United States through official government channels have met with similar results.

Mr. Yemer's father has retained a lawyer in Pakistan to pay the fine needed to trigger Mr. Yemer's release which he expects to occur by Tuesday or Wednesday of this week. He has also confirmed that he can purchase a one-way ticket for Mr. Yemer to fly from the Pakistan International Airport (PIA) to the United States on a commercial airliner, but cannot do so because Mr. Yemer does not have a valid U.S. passport or valid travel documents. Although this information has been conveyed to government officials by AUSA Gillis, no arrangements have been made for Mr. Yemer's return to the United States through official government channels, and no travel documents have been issued. Nor has assistance been offered to Mr. Yemer when he is released from prison.

For most of his confinement, Mr. Yemer has exhibited the symptoms of acute mental illness. The severity of his mental illness is known to State Department officials who have visited him in the Sargodha District Prison and periodically reported on his condition to his father. In an email dated October 15, 2018, State Department Country Officer Samantha Kuo reported that during a Consular visit on October 11, "Aman was able to minimally communicate with the CONOFF." According to Ms. Kuo, Mr. Yemer "has previously been diagnosed with schizophrenia and is on medication." She reported that "the psychiatrist was present to help him communicate and explained that he usually was only able to respond 'yes' or 'no.'" (Email from Samantha Kuo, attached as Exhibit 2). Without this Court's intervention, Mr. Yemer, a U.S.

citizen who has been diagnosed with schizophrenia, will be released from prison to the streets of Pakistan with no place to go, and without the travel documents needed by his father to purchase a commercial airline ticket for his return to the United States.

The State Department's inexplicable failure to issue travel documents has already extended the length of Mr. Yemer's Pakistani prison sentence, imperiled his health and safety, and continues to impede his fundamental right as a U.S. citizen to return to his home country, as has the government's failure to plan for his return.

## ARGUMENT

As a United States citizen, Mr. Yemer has a fundamental right to return to his home county. The government's failure to issue him travel documents unconstitutionally burdens that right and violates substantive due process.

"Substantive due process 'provides heightened protection against government interference with certain fundamental rights and liberty interests.'" *Mohamed v. Holder*, 995 F.Supp.2d 520, 536 (E.D.Va. Jan. 22, 2014) (Trenga, J.) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 719 (1997)). Indeed, substantive due process "protects those fundamental rights and liberties which are, objectively, 'deeply rooted in this Nation's history and tradition,' and 'implicit in the concept of ordered liberty,' such that 'neither liberty nor justice would exist if they were sacrificed.'" *Glucksberg*, 521 U.S. at 720–21 (quoting *Moore v. City of East Cleveland, Ohio*, 431 U.S. 494, 503 (1977) (plurality opinion), and *Palko v. Connecticut*, 302 U.S. 319, 325–26, (1937)).

Among those fundamental rights and liberties is the right of a U.S. citizen to reenter the United States. As this court found, "a U.S. citizen's constitutional right to reenter the United States entails more than simply the right to step over the border after having arrived there."

*Mohamed*, 995 F. Supp. 2d at 536; *see also Newton v. INS*, 736 F.2d 336, 343 (6th Cir. 1984) (noting that citizens "have the right to return to this country at any time of their liking."

A fundamental right will be implicated by government policy or action that, at a minimum, "significantly interferes with the exercise of a fundamental right." *Zablocki v. Redhail*, 434 U.S. 374, 388 (1978). The interplay between the Due Process Clauses of the Fifth and Fourteenth amendment "'forbids the government to infringe ... 'fundamental' liberty interests at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." *Glucksberg*, 521 at 721 (1997) (internal citations omitted). "At some point, governmental actions taken, or not taken, to prevent or impede a citizen from reaching the boarder infringe upon the citizen's right to reenter the United States."[1] In Mr. Yemer's case, the government's inaction has reached or exceeded that point.

By failing to issue the travel documents necessary for Mr. Yemer to depart Pakistan and reenter the United States, or to arrange for his return through official government channels, the government has prevented him from returning to the United States through any practical means – "an important aspect of the citizen's 'liberty' guaranteed in the Due Process Clause of the Fifth Amendment." *Mohamed*, 995 F. Supp. 2d at 537 (quoting *Aptheker v. Secretary of State*, 378 U.S. 500, 505 (1964).

### A. Mr. Yemer Has a Fundamental Right as a United States Citizen to Reenter The Country

Mr. Yemer possess an unalienable right, embedded deeply in the inherent right of every citizen, to return to his country. Indeed, the Supreme Court has described the right of an

---

[1] In *Mohamed*, Judge Trenga denied in part the Government's motion to dismiss a United States citizen's complaint that his inclusion on the Federally maintained "no-fly list" violated his due process right of reentry and was arbitrary and capricious. The court further held that the plaintiff was not required to exhaust his administrative remedies before seeking judicial review. *Mohamed*, 995 F. Supp. 2d at 533.

American citizen to return to the United States from abroad as "absolute." *Tuan Anh Nguyen v. I.N.S.*, 533 U.S. 53, 67 (2001).

This "right of return" has been a long-recognized principle in American jurisprudence. As plainly stated by the Fifth Circuit, "we think it is inherent in the concept of citizenship that the citizen, when absent from the country to which he owes allegiance, has a right to return, again to set foot on its soil." *Worthy v. United States*, 328 F.2d 386, 394 (5th Cir. 1964). In a separate case, the Fifth Circuit went onto hold the right to "re-enter the United States... is fundamental." *Hernandez v. Cremer*, 913 F.2d 230, 238 (5th Cir. 1990). The Ninth Circuit characterized the right of a U.S. citizen to reside in the United States as "absolute." *Cerrillo-Perez v. INS*, 809 F.2d 1419, 1423 (9th Cir. 1987). The Third Circuit found that it is "the fundamental right of an American citizen to reside... in the United States... and to engage in the consequent travel." *Acosta v. Gaffney*, 558 F.2d 1153, 1157 (3d Cir.1977). *See also Ayala-Flores v. INS*, 662 F.2d 444, 446 (6th Cir. 1981) (noting that a citizen is always "free to return and make [a] home in this country"). *See Lozado Colon v. U.S. Dept. of State*, 2 F. Supp. 2d 43, 46 (D.D.C. 1998) (noting that "one of the fundamental rights of citizenship" is the right of a citizen abroad "to return and reside in the United States."); *United States v. Valentine*, 288 F. Supp. 957, 980 (D.P.R. 1968) (explaining that "[t]he only absolute and unqualified right of citizenship is to residence within the territorial boundaries of the United States").

### B. The Government's Inaction Significantly Interferes With Mr. Yemer's Exercise Of A Fundamental Right

By refusing to issue Mr. Yemer the travel documents needed to board an international flight to the United States, the government is interfering with his fundamental right to return home. *Mohamed v. Holder*, 995 F. Supp. 2d at 537

The government need not *actively* block Mr. Yemer at a port of entry to substantially

interfere with his right to return. The Supreme Court explained that the fundamental right to return also protects a citizen's "move[ment] *into* the [] United States." *Balzac v. Porto Rico*, 258 U.S. 298, 308 (1922) (emphasis added). The Sixth Circuit noted that a citizen retains "the right to return to this country *at any time of their liking.*" *Newton v. INS*, 736 F.2d 336, 343 (6th Cir.1984) (emphasis added). Moreover, in *Worthy v. United States*, the Fifth Circuit held that the right of return, possessed by every American citizen, includes the guarantee of "free ingress" into the United States; and that any obstructions on a citizen's movement into the country violates that basic fundamental right. *Worthy*, 328 F.2d 386, 394 (5th Cir. 1964).[2]

Judge Trenga also observed that a governmental policy or regulation that impedes a citizen's ability to travel by commercial aircraft can directly implicate "basic freedoms and liberties:

> "The impact on a citizen who cannot use a commercial aircraft is profound. He is restricted in his practical ability to travel substantial distances within a short period of time, and the inability to fly to a significant extent defines the geographical area in which he may live his life. As a practical matter, an affected person is restricted in his ability to visit family and friends located in relatively distant areas of the country or abroad, which through flight can be reached within a matter of hours but would otherwise take days, if not weeks, to access."

*Mohamed v. Holder*, 995 F. Supp. 2d 520, 528 (E.D. Va. 2014) (citing also *Latif v. Holder*, 969 F.Supp.2d 1293, 1303 (D.Or. Aug. 28, 2013) (noting that flight is often the only feasible form of international travel); *Ibrahim v. Dep't of Homeland Sec.*, No. C 06–00545 WHA, 2012 WL 6652362, at *7 (N.D.Cal. Dec. 20, 2012) (same)).

The impact of preventing Mr. Yemer from returning to the United States could not be

---

[2] In *Worthy*, the Fifth Circuit declared unconstitutional a statute providing that it was unlawful for a citizen to "enter…the United States unless he bears a valid passport." *Worthy*, 328 F.2d 386, 388. The Court reasoned that the statute forced a citizen, without a passport located abroad, to "choose between banishment or expiration on one hand" or re-entering the United States subject to "criminal punishment" on the other. *Id.* at 394.

7

more profound. Indeed, his ability to survive in Pakistan, or to be safely returned to the United States is threatened by the government's intractable inaction.

WHEREFORE, for all the above reasons, Mr. Yemer respectfully requests this Court enter an Order directing officials at the United States State Department or such other government department or agency as has control over Mr. Yemer's ability to return to the United States, to immediately issue him travel documents or procure his immediate return to the United States through official government channels.

Respectfully submitted,

AMAN HASSAN YEMER
By Counsel

_____
Nina J. Ginsberg, Esquire
*Counsel for Defendant*
VSB # 19472
DiMuroGinsberg, P.C.
1101 King Street, Suite 610
Alexandria, VA 22314
703-684-4333 (Phone)
703-548-3181 (Fax)
nginsberg@dimuro.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of August, 2020, I filed the foregoing with the Clerk of Court and emailed a copy to Assistant United States Attorney James P. Gillis at James.P.Gillis@usdoj.gov.

_____
Nina J. Ginsberg